LAW OFFICES OF ROBERT P. SPRETNAK
Robert P. Spretnak, Esq. (Bar No. 5135)
8275 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
Telephone: (702) 454-4900
Fax: (702) 938-1055
Email: bob @ spretnak.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LEEANN E. ARCHULETA; and
MICHAEL B. DICKENS,

        Plaintiffs,

    vs.

CORRECTIONS CORPORATION OF
AMERICA, a Maryland corporation, doing
business as NEVADA SOUTHERN
DETENTION CENTER,

        Defendant.

Case No.: 2:15-cv-1608

**COMPLAINT**

JURY DEMAND

      Plaintiffs LEEANN E. ARCHULETA and MICHAEL B. DICKENS state as follows:

**Jurisdiction**

      1.     This is an action for damages arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17.

      2.     This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(4) (civil rights action), and 42 U.S.C. § 2000e-5(f)(3), as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over each and every pendent state law claim.

      3.     All material allegations relative to the named defendant that is contained within this complaint are believed to have occurred in the State of Nevada, in the County of Nye; therefore, pursuant to 28 U.S.C. § 1391(b)(2), venue properly lies in the southern division of the United States District Court for the District of Nevada.

. . . .

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

Page 1 of 15

**Exhaustion of Administrative Remedy: Plaintiff Archuleta**

4.     On June 24, 2014, Plaintiff Archuleta completed and submitted to the Equal Employment Opportunity Commission ("EEOC") her Intake Questionnaire, stating that she had been subjected to unlawful retaliation by Defendant Corrections Corporation of America, a Maryland corporation, her former employer. A true and correct copy of this Intake Questionnaire is attached as Exhibit 1.

5.     On August 25, 2014, Plaintiff Archuleta formally filed a Charge of Discrimination with the EEOC based on this allegation of unlawful retaliation. A true and correct copy of this Charge of Discrimination is attached as Exhibit 2.

6.     The EEOC duly provided notice to Defendant that Plaintiff Archuleta had filed this Charge of Discrimination.

7.     By notice dated June 10, 2015, the EEOC issued to Plaintiff Archuleta its "Notice of Right to Sue (Issued on Request)," advising Plaintiff Archuleta that the EEOC was terminating its proceedings upon Plaintiff Archuleta's request, and that the EEOC was closing its file regarding the Charge of Discrimination that Plaintiff Archuleta had filed. A true and correct copy of this "Dismissal and Notice of Rights" is attached as Exhibit 3.

8.     Plaintiff Archuleta received this Notice shortly after the date stated that it was mailed.

9.     This action is being filed with this Court within 90 days of the EEOC mailing to Plaintiff Archuleta the aforementioned "Notice of Right to Sue (Issued on Request)" and within 90 days of Plaintiff Archuleta receiving said notice. Therefore, this action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

10.     Plaintiff Archuleta, therefore, has exhausted her administrative remedy on any and all claims pled hereunder prior to filing this action with this Court.

**Exhaustion of Administrative Remedy: Plaintiff Dickens**

11.     On July 16, 2014, Plaintiff Dickens completed and submitted to the Equal Employment Opportunity Commission ("EEOC") his Intake Questionnaire, stating that he had been subjected to unlawful race discrimination and retaliation by Defendant, his former employer. A true and correct copy of this Intake Questionnaire is attached as Exhibit 4.

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

Page 2 of 15

12. On September 16, 2014, Plaintiff Dickens formally filed a Charge of Discrimination with the EEOC based on these allegations of unlawful discrimination and retaliation. A true and correct copy of this Charge of Discrimination is attached as Exhibit 5.

13. The EEOC duly provided notice to Defendant that Plaintiff Dickens had filed this Charge of Discrimination.

14. By notice dated June 11, 2015, the EEOC issued to Plaintiff Dickens its "Notice of Right to Sue (Issued on Request)," advising Plaintiff Dickens that the EEOC was terminating its proceedings upon Plaintiff Dickens's request, and that the EEOC was closing its file regarding the Charge of Discrimination that Plaintiff Dickens had filed. A true and correct copy of this "Dismissal and Notice of Rights" is attached as Exhibit 6.

15. Plaintiff Dickens received this Notice shortly after the date stated that it was mailed.

16. This action is being filed with this Court within 90 days of the EEOC mailing to Plaintiff Dickens the aforementioned "Notice of Right to Sue (Issued on Request)" and within 90 days of Plaintiff Dickens receiving said notice. Therefore, this action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

17. Plaintiff Dickens, therefore, has exhausted his administrative remedy on any and all claims pled hereunder prior to filing this action with this Court.

**General Allegations**

18. Defendant Corrections Corporation of America is a corporation organized under the laws of the State of Maryland, qualified to conduct business in the State of Nevada.

   a. Defendant operates Nevada Southern Detention Center as a private, proprietary, and for-profit correctional facility under contract with the United States government.

   b. Its headquarters is 10 Burton Hills Boulevard, Nashville, Tennessee.

   c. It conducts business in Nye County, Nevada, under the fictitious firm name of "Nevada Southern Detention Center."

   d. The business address for Defendant Corrections Corporation of America, a Maryland corporation, dba Nevada Southern Detention Center, is 2190 E. Mesquite Avenue, Pahrump, Nevada.

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

Page 3 of 15

19. Defendant had over 15 employees at all times relevant to this matter.

20. Defendant had over 500 employees at all times relevant to this matter.

21. Regarding Plaintiff Archuleta:

    a. Plaintiff Archuleta is a citizen of the State of Nevada and a resident of Clark County, Nevada.

    b. Plaintiff Archuleta commenced employment with Defendant on or about January 24, 1994.

    c. Defendant involuntarily terminated the employment of Plaintiff Archuleta on or about June 4, 2014.

    d. Defendant employed Plaintiff Archuleta in the position of Chief of Unit Management at the time of Plaintiff Archuleta's involuntary termination.

    e. Defendant compensated Plaintiff Archuleta at an annualized salary of $84,000 at the time of Plaintiff Archuleta's involuntary termination.

22. Regarding Plaintiff Dickens:

    a. Plaintiff Dickens is a citizen and resident of the State of Texas. He resided in the State of Nevada, in Clark County, at the time of the allegations set forth in this Complaint.

    b. Plaintiff Dickens commenced employment with Defendant in June 2002.

    c. Defendant involuntarily terminated the employment of Plaintiff Dickens on or about June 4, 2014.

    d. Defendant employed Plaintiff Dickens in the position of Assistant Warden at the time of Plaintiff Dickens's involuntary termination.

    e. Defendant compensated Plaintiff Dickens at an hourly rate of $41.00, which annualizes to a salary of over $85,000, at the time of Plaintiff Dickens's involuntary termination.

23. On August 27, 2013, Plaintiff Archuleta suffered a significant injury on the job. She was taken from the Nevada Southern Detention Center in Pahrump, Nevada, via ambulance for medical treatment. She was diagnosed with a concussion and injuries to her neck and back.

24. Also in August 2013, it was reported to Defendant that Plaintiff Archuleta had been subject to sexual harassment by Harley G. Lappin, Chief Corrections Officer and Executive Vice

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

Page 4 of 15

President, during a site visit by Mr. Lappin to the Nevada Southern Detention Center in Pahrump, Nevada.

25. The interaction between Mr. Lappin and Plaintiff Archuleta that day was recorded on video.

26. Information Technology Manager Paul Miller told Plaintiff Archuleta that he reviewed the videorecording and that he told Defendant's investigator that Plaintiff Archuleta had been sexually harassed by Mr. Lappin during that site visit.

27. On September 3, 2013, Plaintiff Archuleta was interviewed by the investigator about this sexual harassment allegation.

    a. Plaintiff Archuleta was asked by the investigator if Mr. Lappin had sexually harassed her.

    b. Plaintiff Archuleta responded that Mr. Lappin had grabbed her hand while touring the facility, ostensibly so that Mr. Lappin could look at a ring on Plaintiff Archuleta's finger. Plaintiff Archuleta also responded that the Warden Charlotte Collins had mocked and ridiculed her over the incident.

    c. Plaintiff Archuleta acknowledged she had not reported the incident as sexual harassment, but that she felt "uncomfortable" and that the incident with Mr. Lappin was "odd."

28. Plaintiff Archuleta was never advised of the outcome of this investigation into this sexual harassment allegation.

29. On September 9, 2013, Plaintiff Archuleta received written disciplinary action, based on a false and spurious allegation that Plaintiff Archuleta had failed to report inmate misconduct at Nevada Southern Detention Center under the Prison Rape Elimination Act. This was the first disciplinary action given to Plaintiff Archuleta in the course of her 20-year career with Defendant.

30. On September 16, 2013, Plaintiff Archuleta filed a complaint with her human resources manager regarding this inappropriate and unfounded written disciplinary action. Plaintiff Archuleta's complaint did not result in any change to the disciplinary action.

31. On March 31, 2014, Defendant placed Plaintiff Archuleta on administrative leave. Plaintiff Archuleta was not told of the reason for her placement on administrative leave at that time.

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

Page 5 of 15

32. A few days later, Plaintiff Archuleta was interviewed by an investigator for Defendant about an incident involving the release of a detainee from segregation.

    a. The interview took place in a public lobby of a hotel.

    b. The investigator's adult son was present during the interview and was involved in the interrogation.

    c. Plaintiff Archuleta explained to the investigator the process for releasing detainees from segregation as applied to the detainee in question. Plaintiff Archuleta explained that Warden Collins had agreed to the release. Plaintiff Archuleta then told the investigator that the detainee was not released as scheduled because of the intervention of a particular sergeant unnamed in this Complaint who convinced Warden Collins to reverse her decision regarding releasing this detainee from segregation. Plaintiff Archuleta learned of this reversal from the above-referenced sergeant, who laughingly told Plaintiff Archuleta that this detainee was not being released.

    d. The investigator asked Plaintiff Archuleta if she believed that there was racism at the facility due to the race of Warden Collins. Plaintiff Archuleta said no.

    e. The investigator asked Plaintiff Archuleta about rumors that Warden Collins was involved in an inappropriate relationship with Latoya Douglas. Plaintiff Archuleta advised the investigator that she had heard about the rumors from Warden Collins herself, and that Warden Collins was upset that no disciplinary action was taken against the individual at the facility who was known to be disseminating these rumors.

33. The detainee at issue in this allegation was released from segregation upon Warden Collins's return to the facility.

34. No corrective action was ever given to Sergeant Harland based on this incident.

35. Plaintiff was then provided a copy of the "problem solving notice." It stated that she ordered subordinate corrections officers to identify themselves as being personally responsible for refusing to move a detainee out of segregation. The "corrective action taken" under the "problem solving notice" was the termination of the employment of Plaintiff Archuleta on June 4, 2014.

36. The allegation against Plaintiff Archuleta set forth in that "problem solving notice" was false.

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

  a. Plaintiff Archuleta merely instructed Sergeant Harland that he was to "tell the truth" about the incident. The reason for this instruction is that Defendant had advised its officers that integrity is core guiding principal.

  b. Plaintiff Archuleta did not direct any corrections officers to speak with the detainee. Plaintiff Archuleta specifically did not direct the particular sergeant referenced in paragraph 31(c), who is not particularly named and who stated that he was in fear for his life and/or safety with regard to this detainee, to speak with the detainee about this incident.

  c. The allegation that Plaintiff Archuleta's directive that Sergeant Harland speak truthfully jeopardized staff safety was false. Sergeant Harland was not involved in the delay. The working environment at a private correctional facility is inherently dangerous and the dangers are generally not mitigated by providing false information to detainees. Plaintiff Archuleta had worked in this environment for a significant period of time and has a practice of responding truthfully to inmate questions and had never been advised that following Defendant's code of integrity would be grounds for termination.

37. Defendant failed and refused to apply its policies and procedures in a non-discriminatory fashion.

  a. Around the time of the suspension of Plaintiff Archuleta, a supervisor of the sergeant referenced but not named in paragraph 31(c) tried to discipline that sergeant for a serious breach of security when that sergeant left an officer alone in segregation with unsecured porters.

  b. Plaintiff Dickens favored disciplinary action being taken against the sergeant referenced but not named in paragraph 31(c).

  c. Warden Collins would not let this sergeant be disciplined. She told Plaintiff Dickens, "You are playing with fire" in attempting to hold this sergeant responsible for his breach of security protocols that did, in fact, seriously endanger a corrections officer.

  d. Warden Collins refused to allow disciplinary action to be taken against this sergeant because this sergeant's falsified allegations and fraudulent grievance against Plaintiff Archuleta were necessary for Warden Collins to put her plan to terminate Plaintiff Archuleta into effect.

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

Page 7 of 15

   e. Plaintiff Dickens objected to Warden Collins about this disparate treatment and failure to uniformly follow policies and procedures.

  38. On April 6, 2014, Plaintiff Dickens participated in the investigation into the "problem solving notice" given Plaintiff Archuleta. In the course of the investigation, Plaintiff Dickens stated that Plaintiff Archuleta was telling the truth about the incident in question.

  39. Prior to this incident, Plaintiff Dickens had been subjected to verbal threats and a hostile working environment under Warden Collins.

   a. Plaintiff Dickens is white/Caucasian.

   b. Warden Collins is black/African-American.

   c. Warden Collins had a demonstrated history of terminating assistants wardens who were white/Caucasian.

   d. Warden Collins falsely accused Plaintiff Archuleta of having an improper relationship with Mr. Lappin based on the videorecording.

   e. Warden Collins ordered Plaintiff Dickens to write up Plaintiff Archuleta (white/Caucasian) and Investigator Al Zavalla (non-white/Latino) for failing to report the sexual harassment. Although Warden Collins ordered Plaintiff Dickens to write up both, Defendant only charged Plaintiff Archuleta with an offense.

  40. On June 4, 2014, Defendant terminated the employment of Plaintiff Dickens.

  41. Plaintiff Dickens had no incidents of misconduct prior to, or subsequent to, his participation in the investigation of Plaintiff Archuleta and his role as a witness corroborating the actions of Plaintiff Archuleta. Plaintiff Dickens was terminated on the same day as Plaintiff Archuleta specifically because of his role as a corroborating witness attesting to the appropriateness of Plaintiff Archuleta's actions with regard to the incident in question.

  42. Plaintiffs Archuleta and Dickens each filed internal grievances seeking a reversal of the respective termination decisions.

  43. The internal grievances of Plaintiffs Archuleta and Dickens were not resolved in favor of either plaintiff. The internal grievances of Plaintiffs Archuleta and Dickens were never even addressed by Defendant.

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

Page 8 of 15

**First Claim for Relief**

*Unlawful retaliation in violation of 42 U.S.C. § 2000e-3(a) (Plaintiff Archuleta)*

44. Plaintiffs Archuleta and Dickens repeat the allegations contained in paragraphs 1 to 43, *supra*.

45. Defendant targeted Plaintiff Archuleta for retaliation in the form of disparate disciplinary action and eventual termination because Plaintiff Archuleta was the subject of an investigation into an act of sexual harassment committed by a member of Defendant's upper management. For the reasons set forth above and in the papers that Plaintiffs filed with the EEOC, Defendant violated 42 U.S.C. § 2000e-3(a) by unlawfully retaliating against Plaintiff Archuleta for having been subjected to sexual harassment and an investigation into said allegations.

46. Because Defendant unlawfully retaliated against Plaintiff Archuleta, Defendant must pay Plaintiff Archuleta damages in an amount to be determined at trial for backpay, frontpay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

47. Because Defendant has been guilty of oppression, fraud or malice, express or implied, Defendant must pay Plaintiff Archuleta an additional amount for the sake of example and by way of punishment.

48. Plaintiff Archuleta has had to procure the services of an attorney to protect her rights and to secure compensation for damages incurred as a result of these violations of Title VII; therefore, she is entitled to recover reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k).

**Second Claim for Relief**

*Unlawful retaliation in violation of 42 U.S.C. § 2000e-3(a) (Plaintiff Dickens)*

49. Plaintiffs Archuleta and Dickens repeat the allegations contained in paragraphs 1 to 48, *supra*.

50. Defendant targeted Plaintiff Dickens for retaliation in the form of disparate disciplinary action and eventual termination because Plaintiff Dickens stated opposition to the sexual harassment and otherwise discriminatory and unlawful treatment of Plaintiff Archuleta. For the reasons set forth above and in the papers that Plaintiffs filed with the EEOC, Defendant violated 42

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

U.S.C. § 2000e-3(a) by unlawfully retaliating against Plaintiff Dickens for his protected opposition to Defendant's Title VII violations with regard to Plaintiff Archuleta.

51.  Because Defendant unlawfully retaliated against Plaintiff Dickens, Defendant must pay Plaintiff Dickens damages in an amount to be determined at trial for backpay, frontpay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

52.  Because Defendant has been guilty of oppression, fraud or malice, express or implied, Defendant must pay Plaintiff Dickens an additional amount for the sake of example and by way of punishment.

53.  Plaintiff Dickens has had to procure the services of an attorney to protect his rights and to secure compensation for damages incurred as a result of these violations of Title VII; therefore, he is entitled to recover reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k).

### Third Claim for Relief

*Retaliation for filing for workers' compensation benefits (Plaintiff Archuleta)*

54.  Plaintiffs Archuleta and Dickens repeat the allegations contained in paragraphs 1 to 53, *supra*.

55.  It is a violation of strong and compelling public policy of the State of Nevada for an employer to discharge, discipline, adversely alter the terms and conditions of employment, or otherwise retaliate against an employee for filing a claim for benefits under the Nevada Industrial Insurance Act ("NIIA"), NRS chapters 616A through 616D.

56.  Defendant violated Nevada law, and strong and compelling Nevada public policy, when it embarked on its course of action immediately following Plaintiff Archuleta's compensable injury and claim for benefits under the NIIA, and which resulted in Defendant's termination of Plaintiff Archuleta's employment.

57.  Because Defendant violated strong and compelling Nevada public policy protecting employees who seek and procure benefits for work-related injuries, Defendant must pay Plaintiff Archuleta damages for backpay, frontpay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life in an amount to be

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

Page 10 of 15

determined at trial.

58. Because Defendant has been guilty of oppression, fraud or malice, express or implied, it should pay Plaintiff Archuleta an additional amount for the sake of example and by way of punishment.

59. Plaintiff Archuleta has had to procure the services of an attorney because of Defendant's tortious misconduct in violation of the Nevada Industrial Insurance Act and strong and compelling Nevada public policy; therefore, she is entitled to an additional amount as special damages for attorney's fees incurred.

### Fourth Claim for Relief

*Violation of NRS 613.010 (Plaintiff Dickens)*

60. Plaintiffs Archuleta and Dickens repeat the allegations contained in paragraphs 1 to 59, *supra*.

61. On or about April 1, 2013, Plaintiff Dickens commenced employment with Defendant at its Nevada Southern Detention Center in Pahrump, Nevada, in the position of Assistant Warden.

62. Plaintiff Dickens relocated to the State of Nevada from Crosby, Texas, in order to accept this new position with Defendant.

63. In February 2012, Plaintiff Dickens had been approached by Regional Director Charles Martin to take the position of Assistant Warden.

64. Plaintiff Dickens initially declined this position because of poor reputation of Warden Collins. It was well-known among Defendant's upper level employees that it was very difficult to work with Warden Collins. Warden Collins had a reputation of having great difficulty working with assistant wardens and other upper level management employees who were white/Caucasian.

65. In January 2013, Regional Director Martin again approached Plaintiff Dickens about taking the position of Assistant Warden. Regional Director Martin advised Plaintiff Dickens that there were serious "racial problems" at the facility and that Defendant needed him in that position to assist in resolving or diminishing these "racial problems."

66. Regional Director Martin said to Plaintiff Dickens, "I guarantee you nothing is going to happen to you." This was a reference to the fact that Regional Director Martin would assure

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

Page 11 of 15

1  Plaintiff Dickens that Warden Collins would not harass or terminate him as was her pattern and
2  practice with other white/Caucasian assistant wardens.

3       67.    This promise was the deciding factor in Plaintiff Dickens accepting the position with
4  Defendant in Pahrump, Nevada, and relocating himself and his family from Crosby, Texas. to take
5  this new position.

6       68.    This promise was false. Defendant had no intention of abiding by the terms of this
7  promise. Plaintiff Dickens was exposed to a campaign of bullying, harassment and retaliation at the
8  hands of Warden Collins that soon culminated in Plaintiff Dickens's termination. Warden Collins
9  repeatedly told Plaintiff Dickens that he was not her choice for the job and that she wanted another
10 individual hired into that position. She fully intended to take action to have Plaintiff Dickens "fail"
11 in the eyes of Defendant in that position, despite the false assurances of Regional Director Martin.

12      69.    Defendant, and those acting on its behalf and as its agents, violated NRS 613.010(1)
13 by fraudulently inducing Plaintiff Dickens to change his place of employment, to relocate to Nevada
14 from Texas, and to accept employment with Defendant at its Nevada Southern Detention Center.
15 Defendant used false or deceptive representations, false advertising or false pretenses concerning the
16 kind and character of the work to be done.

17      70.    Because Defendant violated Nevada law by fraudulently inducing Plaintiff Dickens
18 to accept employment in Nevada and for Plaintiff Dickens to relocate to Nevada from Texas,
19 Defendant must pay Plaintiff Dickens damages in an amount to be determined at trial, for backpay,
20 frontpay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience,
21 mental anguish and loss of enjoyment of life.

22      71.    Because Defendant has been guilty of oppression, fraud or malice, express or implied,
23 it should pay Plaintiff Dickens an additional amount for the sake of example and by way of
24 punishment.

25      72.    Because of Defendant's violation of NRS 613.010, Plaintiff Dickens has had to
26 procure the services of an attorney to protect his rights and secure compensation for the damages
27 incurred; therefore, is entitled to an additional amount for attorney's fees incurred, as special
28 damages and pursuant to NRS 613.010(3).

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

**Fifth Claim for Relief**

*Unlawful race discrimination in violation of 42 U.S.C. § 2000e-2(a) (Plaintiff Dickens)*

73. Plaintiffs Archuleta and Dickens repeat the allegations contained in paragraphs 1 to 72, *supra*.

74. By the actions set forth above, Defendant violated 42 U.S.C. § 2000e-2(a) because it unlawfully discriminated against Plaintiff Dickens because he is white/Caucasian due to the acts of the Warden of the Nevada Southern Detention Center, who is black/African-American.

75. Because Defendant unlawfully discriminated against Plaintiff Dickens and subjected him to disparate treatment and harassment because of his race in violation of 42 U.S.C. § 2000e-2(a), Defendant must pay Plaintiff Dickens damages for backpay, frontpay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

76. Because Defendant has been guilty of oppression, fraud or malice, express or implied, it must pay Plaintiff Dickens an additional amount for the sake of example and by way of punishment.

77. Plaintiff Dickens has had to procure the services of an attorney to protect his rights and to secure compensation for damages incurred as a result of these violations of Title VII; therefore, he is entitled to recover reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k).

**Sixth Claim for Relief**

*Negligent hiring, training and supervision (Plaintiffs Archuleta and Dickens)*

78. Plaintiffs Archuleta and Dickens repeat the allegations contained in paragraphs 1 to 77, *supra*.

79. Defendant was under a duty to exercise reasonable as to train and control its employees, including but not limited to (a) Warden Collins and (b) the investigator who conducted the April 6, 2014, interview of Plaintiff Archuleta, so that said employees would not intentionally cause harm to Plaintiffs Archuleta and Dickens.

80. The intentional harm caused by Defendant, acting through its employees, officers and agents, that was suffered by Plaintiff Archuleta and Dickens, was as follows:

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

Page 13 of 15

a. Defendant has an integrity policy in place, but allowed Warden Collins to terminate Plaintiffs Archuleta and Dickens for following said policy.

b. Defendant allowed its employees, officers and agents including but not limited to Warden Collins to demand that Plaintiffs Archuleta and Dickens violate the integrity policy as a condition of further employment with Defendant.

c. Defendant failed to properly train and supervise the investigator who conducted the April 6, 2014, interview of Plaintiff Archuleta, in that the interview took place under conditions that did not respect the privacy and/or dignity of Plaintiff Archuleta and did not reflect the gravity of the investigatory process.

81. Defendant knew or should have known of the above actions undertaken by its employees, officers and agents employees, including but not limited to (a) Warden Collins and (b) the investigator who conducted the April 6, 2014, interview of Plaintiff Archuleta.

82. By failing to properly train and control its employees, and by failing to stop the resulting harm to Plaintiffs Archuleta and Dickens, Defendant breached its duty to exercise reasonable care in the hiring, training and supervision of employees, officers and agents employees.

83. Defendant's breach of its duty to exercise reasonable care in hiring, training and supervision of its employees, officers and agents – which it owed to Plaintiffs Archuleta and Dickens – caused financial, psychological and physical injury to both Plaintiffs Archuleta and Dickens.

84. By the actions set forth above, as a result of the negligent hiring, training and supervision of its employees, officers and agents, Defendant is liable in negligence to Plaintiffs Archuleta and Dickens.

85. Because Defendant was negligent in its hiring, training and supervision of employees, officers and agents referenced above, Defendant must pay Plaintiffs Archuleta and Dickens damages in an amount to be determined at trial.

86. Because Plaintiffs Archuleta and Dickens has been obligated to procure the services of an attorney to protect their rights in light of this intentional tortious misconduct, they each are entitled to an award of reasonable attorney's fees as part of their actual damages.

. . . .

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

Page 14 of 15

WHEREFORE, Plaintiffs LEEANN E. ARCHULETA and MICHAEL B. DICKENS pray that the following judgment be entered upon a trial by jury, against Defendant CORRECTIONS CORPORATION OF AMERICA, a Maryland corporation, doing business as NEVADA SOUTHERN DETENTION CENTER:

1. Monetary damages in an amount to be determined at trial, which continue to accrue;

2. An award of interest on the amount owed;

3. Punitive damages;

4. An award of attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k), or any other statute, as appropriate;  and

5. Any further relief that this Court deems just.

Respectfully submitted,

LAW OFFICES OF ROBERT P. SPRETNAK

By: /s/ Robert P. Spretnak
    Robert P. Spretnak, Esq.

Attorney for Plaintiff

8275 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123

THE LAW OFFICES OF
ROBERT P. SPRETNAK
A PROFESSIONAL CORPORATION
8275 S. EASTERN AVENUE
SUITE 200
LAS VEGAS, NEVADA 89123

Page 15 of 15