UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LEEANN E. ARCHULETA; and MICHAEL B. DICKENS,<br><br>　　　　　　　　　　Plaintiffs,<br>　　v.<br>CORRECTIONS CORPORATION OF AMERICA, a Maryland corporation, doing business as NEVADA SOUTHERN DETENTION CENTER,<br>　　　　　　　　　　Defendant. | Case No. 2:15-cv-01608-MMD-VCF<br><br>ORDER |

**I.    SUMMARY**

Plaintiffs LeeAnn Archuleta and Michael Dickens ("Plaintiffs") claim they were involuntarily terminated in violation of federal and state law. Defendant Corrections Corporation of America ("Defendant" or "CCA") filed a Second Motion to Dismiss ("Motion") (ECF No. 36) pursuant to Federal Rule of Civil Procedure 12(b)(6) after Plaintiffs submitted their First Amended Complaint ("FAC") (ECF No. 33). The Court has reviewed the Motion, Plaintiffs' response (ECF No. 37) and Defendant's reply (ECF No. 40). For the reasons discussed below, Defendant's Motion is granted and Plaintiffs' FAC is dismissed with prejudice.

**II.    BACKGROUND**

On July 6, 2016, Plaintiffs Archuleta and Dickens filed their FAC against CCA after Defendant's first motion to dismiss was granted with leave for Plaintiffs to amend. (ECF Nos. 30, 31.) In the FAC, Archuleta alleges unlawful retaliation claims under Title

VII and for filing a worker's compensation claim. (ECF No. 33 at 9-11, 13-15.) Dickens alleges an unlawful retaliation claim under Title VII, an unlawful racial discrimination claim under Title VII, and a claim for violation of NRS § 603.010(1). (*Id.* at 11-13, 15-18.) Both Plaintiffs allege that Defendant negligently hired, trained, and supervised their employees. (*Id.* at 18-19.) Plaintiffs claim that they exhausted their administrative remedies under the Equal Employment Opportunity Act before seeking judicial review.

The following facts are taken from the FAC. Plaintiffs were employed at Nevada Southern Detention Center ("NSDC"), a CCA prison. Archuleta asserts that CCA involuntarily terminated her employment on June 4, 2014, after roughly ten years of employment. (*Id.* at 4.) She was employed in the position of Chief of Unit Management at the time of her termination. Dickens asserts that CCA involuntarily terminated his employment on or about June 4, 2014, after roughly twelve years of employment. At the time of his termination, he was employed as Assistant Warden.

Archuleta claims that she suffered a significant injury on August 27, 2013, while working at NSDC and was taken via ambulance to a hospital where she was treated for a concussion and injuries to her neck and back. Archuleta then acquired worker's compensation benefits under the Nevada Industrial Insurance Act ("NIIS"), NRS chapters 616A-616D. (*Id.* at 5.) Around that same time, allegations emerged[1] that Archuleta had been sexually harassed by Chief Corrections Officer and Executive President Harley G. Lappin during a site visit he had made to NSDC. On September 3, 2013, Archuleta was interviewed by an investigator about the incident; Archuleta informed the investigator that Mr. Lappin had grabbed her hand while touring the facility, ostensibly so that Mr. Lappin could look at a ring on her finger. Based on a video recording of this incident, Warden Charlotte Collins ("Warden Collins" or "Collins") allegedly falsely accused Archuleta of having an improper relationship with Mr. Lappin.

///

---

[1] These allegations were raised by another CCA employee and not Archuleta.

Subsequently, on September 9, 2013, Archuleta received a written disciplinary action, her first while employed by Defendant, based on allegedly false and spurious allegations that she had failed to report inmate misconduct at NSDC. (*Id.* at 6.) On September 16, 2013, Archuleta filed a complaint with human resources alleging that the written disciplinary action was inappropriate and unfounded. No action resulted from her complaint. On March 31, 2014, CCA placed Archuleta on administrative leave, but she was not provided with a reason for the leave. While on administrative leave, an investigator interviewed Archuleta about an incident involving the release of a detainee from segregation. The interview occurred in the public lobby of a hotel, and the interviewer's son was present during the interview and participated in the interrogation. Archuleta told the interviewer that the detainee was not released as scheduled because a particular sergeant — possibly Sergeant Harland[2] — convinced Warden Collins to reverse her prior decision to release the detainee. The interviewer then asked Archuleta if she believed there was racism at the facility due to the race of Warden Collins — who is black — to which Archuleta replied no. Archuleta also told the interviewer that she had heard rumors that Warden Collins was involved in an inappropriate relationship with an employee and that Collins had told Archuleta that she was upset no disciplinary action had been taken against the person disseminating the rumors.

The detainee incident resulted in the termination of Archuleta on the basis that she had ordered subordinate officers to identify themselves as refusing to move a detainee out of segregation. (*Id.* at 7.) Dickens wanted to take disciplinary action against the sergeant involved in the incident but was told by Warden Collins not to do so. She allegedly told Dickens that he was "playing with fire" in trying to hold the particular sergeant responsible. (*Id.* at 8.) Collins then ordered Dickens to write up Archuleta and

---

[2] It is difficult for the Court to follow the factual allegations stated in the FAC and to parse the identities of certain individuals as well as whether particular events are the same or are separate. The FAC claims that an unnamed sergeant was involved in the detainee incident but then a few paragraphs later mentions that no action was taken against a Sergeant Harland. (ECF No. 33 at 6-7.)

3

the investigator who had asked Archuleta about the touching incident for failure to report sexual harassment. However, Collins ultimately charged only Archuleta with an offense. Dickens told Collins he disagreed with the disparate treatment between Archuleta and the investigator. On April 6, 2014, Dickens participated in an investigation into the separate incident regarding failure to move a detainee out of segregation and affirmed Archuleta's credibility. Dickens was then terminated on June 4, 2014.

## III. DISCUSSION

### A. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action supported only by conclusory statements do not suffice. *Id.* at 678. Second a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does

4

not permit the court to infer more than the mere possibility of misconduct, the complaint "has alleged — but not show[n] — that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

### B. Analysis

Defendant contends that despite being given the opportunity to amend their original complaint, the FAC asserts the same facts, which fail to allege a plausible claim for relief. (ECF No. 36 at 3.) The Court agrees with the Defendant for the reasons stated below.

#### 1.   *Archuleta's Unlawful Retaliation Claim*

"Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[], forbids retaliation by employers against employees who report workplace race or gender discrimination." *Crawford v. Metropolitan Gov't of Nashville*, 555 U.S. 271, 273 (2009). To successfully allege a prima facie claim of unlawful retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) the employer then subjected the plaintiff to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action. *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1140-41 (9th Cir. 2001); 42 U.S.C. § 2000e-3(a). "Protected activity" occurs when an employee opposes any unlawful employment practice as identified in the statute ("opposition clause") or when the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing brought pursuant to the statute ("participation clause"). *Crawford*, 555 U.S. at 272. In Plaintiffs' FAC, Archuleta alleges that the protected activity she engaged in

1  included: being interviewed by an internal investigator about potential sexual harassment
2  against her; telling the investigator that a supervisor (Mr. Lappin) had grabbed her hand
3  while touring the facility, ostensibly to look at a ring on her finger; that she had not
4  reported the incident as sexual harassment but felt uncomfortable at the time and found
5  the incident to be odd; that Warden Collins "mocked and ridiculed" Archuleta for the
6  incident; and that Warden Collins falsely accused Archuleta of having an improper
7  relationship with the supervisor in question. (ECF No. 33 at 5.) In the FAC, Archuleta
8  relies on the opposition clause (as opposed to the participation clause) to claim that she
9  opposed the alleged sex discrimination and sexual harassment. *See Crawford*, 555 U.S.
10 at 272 (under the participation clause, the investigation or proceeding an employee
11 participates in cannot be a solely internal investigation but must be one brought pursuant
12 to a Title VII charge pending before the Equal Employment Opportunity Commission).

The Court, however, finds that Archuleta's alleged actions do not demonstrate that she "opposed" her supervisor's alleged unlawful actions because she made no claim of sexual discrimination or sexual harassment to the investigator. While the Supreme Court has held that an employee can oppose a supervisor's action by responding to a question, opposition requires that the employee communicate a belief that the supervisor engaged in discrimination or harassment based on the employee's membership in a protected class. *See Crawford*, 555 U.S. at 276. Based on the facts as alleged in the FAC, in response to the investigator's question about the alleged incident, Archuleta stated that she felt uncomfortable by the incident and that she found it to be odd. (ECF No. 33 at 5.) She therefore failed to convey a belief that her supervisor had harassed her or discriminated against her based on her sex.[3]

---

[3] Further, the supervisor's alleged touching of Archuleta's hand on one occasion does not amount to hostile environment sexual harassment under Title VII. The Ninth Circuit has held that a single incident of touching, while potentially offensive, does not rise to the level of harassment for which Title VII offers a remedy. *See Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000); *see also Ellison v. Brady*, 924 F.3d 872, 879 (9th Cir. 1991) ("[A] female plaintiff states a prima facie case of hostile environment sexual harassment when she alleges conduct which a reasonable woman could
*(…fn. cont.)*

6

Archuleta fails to state a claim for retaliation and this claim will be dismissed with prejudice.

### 2. Archuleta's Wrongful termination claim for filing a worker's compensation claim

To demonstrate a prima facie claim for wrongful termination for filing a worker's compensation claim under Nevada law, the plaintiff must allege sufficient facts demonstrating that plaintiff's ultimate termination was based upon her filing of the worker's compensation claim. *See Bigelow v. Bullard*, 901 P.2d 630, 632 (Nev. 1995). This requires a showing that the worker's compensation claim was the sole proximate cause of the plaintiff's termination. *Kahn v. Ace Cab, Inc.*, No. 2:12-cv-01125-APG-NJK, 2015 WL 1038078, at 4 (D. Nev. Mar. 9, 2015). In assessing proximate causation, a court may look at the temporal proximity between the filing of a worker's compensation claim and the wrongful termination. *See Hardy v. Chromy*, 367 P.3d 777 (Nev. 2010) (considering temporal proximity the deciding factor in a tortious discharge claim). The Court has found that a nine-month gap between the alleged compensation claim and the employee's termination date demonstrated a lack of temporary proximity and was therefore insufficient to establish proximate cause for termination. *See Law v. Kinross Gold U.S.A., Inc.*, No. 3:12-CV-00261-LRH-VPC, 2014 WL 1577301, at *8 (D. Nev. Apr. 18, 2014).

Based on the facts as alleged in the FAC, Archuleta has failed to show that her filing of a worker's compensation claim was the sole proximate cause of her termination. Archuleta states that on August 27, 2013, she suffered a significant injury on the job for which she filed and received worker's compensation benefits. (ECF No. 33 at 14.) She

---

*(…fn. cont.)*
consider sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment."). Additionally, a reasonable person in Archuleta's position would not have found the incident to be sexual harassment or discrimination. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 271 (2001) ("No reasonable person could have believed that the single incident . . . violated Title VII's standard.").

7

then received written disciplinary action on September 9, 2013, for a "false and spurious allegation" that she had failed to report inmate misconduct at NSDC under the Prison Rape Elimination Act. (*Id.*) On March 31, 2014, Archuleta states that she was placed on administrative leave, seven months after her on-the-job injury. *(Id.)* A little over two months later, on June 4, 2014, Defendant terminated Archuleta's employment.

There was an approximately ninth-month period between the date of Archuleta's on-the-job injury and the date of Archuleta's termination. Archuleta also makes an alternative allegation as to the reason for her termination — i.e., opposing the supervisor's alleged sexual harassment. For these reasons, the Court finds that Archuleta has failed to show that her filing of a worker's compensation claim was the sole proximate cause of her termination. The mere existence of an allegedly wrongful disciplinary action taken subsequent to the compensation claim does not constitute sufficient evidence that Archuleta's later termination was caused by her filing of the worker's compensation claim. (*Id.* at 14.) Even if the written disciplinary action was based on a false and spurious allegation — although the FAC fails to provide facts as to why this is so — Defendant did not place Archuleta on administrative leave until close to seven months after the disciplinary action was issued to her.[4]

This claim is therefore dismissed with prejudice.

///

///

---

[4] The written disciplinary action may have been a result of the filing of a worker's compensation claim, but Archuleta does not allege retaliation in the form of adverse employment action for filing of worker's compensation in the FAC. Moreover, Nevada law does not clearly provide a cause of action for a disciplinary action (other than wrongful termination) exercised in response to the filing of a worker's compensation claim. *See Hansen v. Harrah's*, 675 P.2d 394, 396 (Nev. 1984) ("the failure of the [Nevada] legislature to enact a statute expressly forbidding retaliatory discharge for filing workmen's compensation claims does not preclude this Court from providing a remedy for what we conclude to be tortious behavior."); *see also McNamee v. Freeman Decorating Services, Inc.*, No. 2:10-CV-01294-GMN-PAL, 2012 WL 1142710, at *2 (D. Nev. Apr. 4, 2012) (dismissing a claim for retaliatory refusal to hire based on existing worker's compensation claim because the claim of retaliatory refusal to hire is not recognized under Nevada law).

### 3. Dickens' Unlawful Retaliation Claim

Under Title VII, it is unlawful for an employer to discriminate against any employee for opposing an unlawful employment practice or for making a charge, testifying, assisting, or participating in any manner in a Title VII investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a). As stated previously, *supra* III.B.1., to succeed on a retaliation claim, a plaintiff must demonstrate: (1) she was engaging in protected activity/opposition; (2) she suffered an adverse employment decision; and (3) there was a causal link between her activity and the employment decision. *Bergene*, F.3d at 1140-41.

In the FAC, Dickens claims that his "protected activity" was his opposition to the termination and sex discrimination of Archuleta. (ECF No. 33 at 12.) Dickens participated in an internal investigation concerning the disciplinary action[5] against Archuleta and vouched for her credibility when interviewed. (*Id.*) Dickens also claims that when he attempted to impose disciplinary action on the sergeant who had actually committed the violation for which Archuleta was disciplined,[6] Warden Collins prevented him from doing so, which subsequently led to Archuleta's termination. (*Id.* at 7, 12.) While Dickens was terminated two months after he made statements during the internal investigation (and appears to have been terminated at the same time as Archuleta), he did not engage in any protected activity. Making statements during a company's internal investigation concerning an alleged violation of prison procedure does not concern a Title VII investigation or matter protected under Title VII. Additionally, Dickens fails to plead any

---

[5]In the FAC, Archuleta claims she filed a complaint about the September 2013 written disciplinary action to her human resources manager and that doing so "did not result in any change to the disciplinary action." (ECF No. 33 at 6.) It is unclear if this incident relates to the internal investigation that occurred in April 2014. The FAC states that she received a "problem solving notice" in March 2014 concerning the incident that resulted in her termination (*Id.* a 7), but it is unclear if this notice is related to the written disciplinary action she received in September or the complaint she subsequently made to human resources.

[6]It is hard to discern from the FAC if the disciplinary notice that Archuleta received on September 9, 2013, stems from the same event for which she was terminated. In any case, the event that she was terminated for and for which Dickens attempted to discipline a sergeant appear to be the same.

9

facts demonstrating he opposed the alleged sex discrimination against Archuleta. This claim is therefore dismissed with prejudice.

### 4. Dickens' Claim under NRS § 613.010(1)

NRS § 613.010(1) makes it unlawful for any person or entity doing business in the state of Nevada to "induce, influence, persuade or engage" an individual to move within the state or from out of state through "means of false or deceptive representations, false advertising or false pretenses" concerning: (1) the kind and character of the work to be done; (2) the amount and character of the compensation to be paid for such work; (3) the sanitary or other conditions of employment; or (4) the existence or nonexistence of a strike or other pending trouble between the employer and employers at the time of or prior to the individual's start date of employment. NRS § 613.010(1)(a)-(d). A claim under NRS § 613.010(1) must meet Rule 9's heightened pleading standard. *See Latcheran v. Primecare Nevada, Inc.*, No. 2:11-cv-1590-JCM-PAL, 2012 WL 984075, at *6 (D. Nev. Mar. 22, 2012).

In the FAC, Dickens alleges that he relied on the CCA Regional Director's statement, "nothing is going to happen to you," in accepting the position at NSDC and to support his claim that he was fraudulently induced into moving to Nevada from Texas to work for Defendant. (ECF No. 33 at 16.) Dickens characterizes this statement as a "promise," but Dickens was an at-will employee under Nevada law, which means his employment could be terminated for any reason at any time. Moreover, based on the facts as pled in the FAC, the Regional Director did not misrepresent any of the conditions outlined under NRS § 603.010(1). The statement "nothing is going to happen to you" is not a deceptive statement concerning a condition of the statute. This claim is therefore dismissed with prejudice.

### 5. Dicken's Unlawful Race Discrimination

Federal law prohibits discharging any individual because of his race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a). A prima facie claim of race discrimination under Title VII requires a plaintiff to allege that: (1) he belongs to a

10

protected class; (2) he was performing according to Defendant's legitimate expectations; (3) he suffered an adverse employment action because of his race; and (4) similarly situated individuals not in his protected class were treated more favorably. *See Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Dickens fails to plead all the elements of an unlawful race discrimination claim. Specifically, he fails to allege sufficient facts to show that similarly situated individuals of a different race were treated more favorably than he was and that his race was the sole cause of his termination. The FAC states that Warden Collins, a black/African American woman, demonstrated a "pattern of engaging in race discrimination as she had a history of terminating assistants [sic] wardens who were white/Caucasian." (ECF No. 33 at 17.) This is a legal conclusion not supported by any specific facts (e.g., the specific assistant wardens who had been fired and details demonstrating a similar pattern as the one Dickens alleges) and is not sufficient to meet Rule 8's pleading standard. *See Iqbal*, 556 U.S. at 678. This claim is therefore dismissed with prejudice.

### 6. Archuleta's and Dickens' Claims for Negligent Hiring, Training and Supervision

The tort of negligent hiring imposes a "general duty on an employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position." *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996). The employer breaches this duty when it "hires an employee even though [it] knew, or should have known, of that employee's dangerous propensities." *Id*. Plaintiffs fail to make any factual allegations that CCA negligently hired any of its employees.

A claim for negligent training and/or supervision occurs when an employer violates its duty to "use reasonable care in the training, supervision, and retention of [its] employees to make sure that the employees are fit for their positions." *Hall*, 930 P.2d at 99. The elements of this claim are: (1) a general duty on the employer to use reasonable care in the training and/or supervision of employees to ensure that they are fit for their

11

positions; (2) breach; (3) injury: and (4) causation. *Hall*, 930 P.2d at 98 (duty and breach); *Jespersen v. Harrah's Operating Co.*, 280 F. Supp. 2d 1189, 1195 (D. Nev. 2002) (injury and causation).

While Plaintiffs allege that CCA was under a duty to exercise reasonable care by training and controlling their employees (ECF No. 33 at 18), they fail to allege sufficient facts to show that the other three elements of the negligent training and/or supervising claim have been met. Plaintiffs merely assert that CCA failed to fulfill this duty because Warden Collins and the investigator who interviewed Archuleta about the touching incident intentionally caused harm to the Plaintiffs. (*Id.*) Plaintiffs base these allegations on the fact that CCA had an "integrity policy" for its employees and their belief, not supported by any factual allegations, that Warden Collins terminated them for following that policy. (*Id.*) Archuleta bases her negligent training and supervision claim against the investigator on the fact that he interviewed her in a public place with another person present, violating her privacy. (*Id.* at 6.) While the interview may very well have violated her privacy, which the Court recognizes as an injury in itself, Archuleta fails to allege any facts as to how CCA caused the injury. Without any facts pled regarding breach or causation, the FAC fails to state a claim for which this Court may grant relief. This claim is therefore dismissed with prejudice.

In sum, the Court agrees with Defendant that Plaintiffs fail to allege facts sufficient to state their claims. Because Plaintiffs were given the opportunity to amend their complaint, the Court dismisses the FAC with prejudice.

**IV.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions.

///

///

1  It is therefore ordered that CCA's Motion to Dismiss (ECF No. 36) is granted.

2  The Clerk is directed to enter judgment in favor of Defendant and close this case.

3  DATED THIS 1st day of March 2017.

                                                   MIRANDA M. DU  
                                                   UNITED STATES DISTRICT JUDGE