UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

LEANN ARCHULETA; AND MICHAEL DICKENS, an individual,

Plaintiffs,

v.

CORRECTIONS CORPORATION OF AMERICA, A MARYLAND CORPORATION DOING BUSINESS AS NEVADA SOUTHERN DETENTION CENTER,

Defendant.

Case No. 2:15-cv-01608-MMD-VCF

ORDER

**I. SUMMARY**

Plaintiff Leann Archuleta[1] brought this employment dispute asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (ECF No. 33.) The sole issue before the Court is whether Defendant Corrections Corporation of America is entitled to summary judgment on Plaintiff's remaining retaliation claim. The Court finds in the affirmative because Plaintiff fails to meet her *prima facie* burden. Thus, the Court grants Defendant's motion for summary judgment ("Motion"). (ECF No. 81.)[2]

///
///
///
///
///

---

[1]As indicated by the case caption, Michael Dickens was also a Plaintiff in this case. However, the Court previously dismissed Dickens' claims with prejudice. (*See* ECF No. 80.)

[2]The Court has reviewed Plaintiff's response (ECF No. 84) and Defendant's reply (ECF No. 88).

## II. BACKGROUND

The following facts are undisputed.

This case chiefly arises from Defendant's termination of Plaintiff for purportedly ordering subordinate officers to identify themselves to a detainee as being the reason why that detainee would not be removed from the segregation unit of the Nevada Southern Detention Center ("NSDC"). (*See, e.g.*, ECF No. 33 at 4, 8; ECF No. 81-17.) As relevant here, Plaintiff claims that her termination was in retaliation of her opposition to sexual harassment. (ECF No. 33, ECF No. 84 at 25.)

Plaintiff began working for Defendant at NSDC in 2010, although she had worked for Defendant since 1994. (ECF No. 84-1 at 2; ECF No. 81-3 at 5.) At the time of her termination, in June 2014, she was employed as the Chief of Unit Management. (ECF No. 84-1 at 2.) Her responsibilities included providing training on the Prison Rape Elimination Act ("PREA"). (ECF No. 81-3 at 18.) Her direct supervisor was her former co-plaintiff, Michael Dickens, who reported to NSDC's Warden, Charlotte Collins. (*Id.* at 15–16, 19–20.)

While visiting Nevada in summer 2013, Defendant's Chief Operating Officer and Executive Vice President, Harley Lappin, took a tour of NSDC. (*Id.* at 21–23.) Collins and Plaintiff were among those also on the tour. (*Id.* at 23–24, 26.) At some point during the tour, Lappin reached for Plaintiff's hand. (ECF No. 84-1 at 2–3.) Anticipating a handshake, Plaintiff put her hand out toward Lappin. (*Id.*) Lappin took Plaintiff's hand and put his hand on top of her hand, stating "Boy, he must really love you"—looking at Plaintiff's ring. (*Id.*; ECF No. 81-3 at 25.) Plaintiff pulled her hand away and said it was a cheap ring. (*Id.*) The exchange lasted for roughly six seconds. (ECF No. 81-3 at 43.)

Plaintiff and Collins made jokes about the incident. (ECF No. 81-8 at 2–3; ECF No. 81-7 at 2; ECF No. 81-5 at 4 (stating that Plaintiff was making a "mockery of the situation").) Plaintiff also obtained a copy of a photo from video surveillance which captured her exchange with Lappin. (ECF No. 84-1 at 3; ECF No. 81-8 at 3.) Collins concluded that

///

Plaintiff "wouldn't let the incident go" and decided to tell her supervisor. (ECF No. 81-8 at 4.)

Ultimately, the incident was investigated on September 3, 2013 (the "Investigation"). (ECF No. 81-9 at 2.) Notably, Dickens issued Plaintiff a discipline, dated August 30, 2013, for a violation of PREA for failure to report two PREA allegations. (ECF No. 81-19 at 2; ECF No. 81-3 at 44–45.) Plaintiff claims she did not receive the discipline until September 9, after she was interviewed as part of the Investigation. (ECF No. 84-1 at 4.) Plaintiff also provided written statements to the investigator, wherein she essentially disavowed believing she was sexually harassed. (*See, e.g.*, ECF No. 81-3 at 28-41; ECF No. 81-10.) Upon interviewing several individuals, the investigator determined that nothing inappropriate occurred in the interaction between Lappin and Plaintiff and the Investigation was closed. (ECF No. 81-9 at 2–3.)

In early 2014, two of Plaintiff's subordinates—Harry Harland and Michael Donlon—filed incident reports complaining about a separate matter involving a detainee who had requested to be transferred out of segregation. (ECF Nos. 81-13, ECF No. 81-14.) Harland reported that Plaintiff had instructed him to tell the detainee that he would not be transferred out of segregation because Harland and Donlon were opposed to it. (ECF No. 81-13 at 3.) Plaintiff insists that she only told Harland to tell the detainee "the truth" about why he would not be transferred from segregation because Dickens directed her to do so. (ECF No. 84-1 at 9.) In March 2014, Plaintiff was placed on administrative leave. (*Id.* at 5.)

Thereafter, an investigator concluded that there was sufficient evidence supporting a finding that Plaintiff ordered Harland to disclose to the detainee as Harland reported in his incident report. (ECF No. 81-17 at 18.) Among other things, the investigator also concluded that enough evidence supported that the directed disclosure was "based solely on retaliation by [Dickens] and [Plaintiff] for their perception that the officers had undermined their authority in making transfer decisions and in retaliation for their perception that [Harland and Donlon] reported their safety concerns [about the detainee's

transfer] to the Warden." (*Id.*) Finally, the investigator concluded that the evidence supports a conclusion that Plaintiff and Dickens acted in "reckless disregard" for the safety of subordinate officers by exposing then to potential inmate violence. (*Id.* at 19.) Defendant terminated Plaintiff and Dickens, citing to the detainee-incident as a violation of Defendant's code of conduct. (ECF No. 81-20 at 2; ECF No. 81-5 at 13–14; ECF No. 88-5.)

Plaintiff and Dickens brought this action in August 2015. (*See, e.g.*, ECF No. 45 at 1–2 (explaining the allegations); ECF No. 1.) For her part, Plaintiff alleged unlawful retaliation claims under Title VII and for filing a worker's compensation claim. (ECF No. 33 at 9–11, 13–15.) Plaintiff also alleged that Defendant negligently hired, trained, and supervised its employees. (*Id.* at 18–19.) The Court dismissed all claims. (ECF Nos. 45, 46.) Plaintiff and Dickens appealed. (ECF Nos. 47, 52.) The Ninth Circuit affirmed the Court's ruling in part but reversed the Court's dismissal of Plaintiff and Dickens' retaliation claims under Title VII and Dickens' race discrimination claim. (ECF No. 52 at 2–4.) Dickens' claims were dismissed with prejudice on April 23, 2019. (ECF No. 80.) Thus, the only claim remaining is Plaintiff's retaliation claim under Title VII.

### III.    LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the

moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Moreover, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

## IV. DISCUSSION[3]

The Court finds that Plaintiff fails to meet her burden of advancing a prima facie case of unlawful retaliation. In particular, Plaintiff fails to establish the first prong of a prima facie case—to show that she engaged in protected activity. Because the Court reaches this conclusion, the Court does not consider whether Plaintiff has satisfied the other prongs.

To prevail on a retaliation claim under Title VII, a plaintiff must first establish a prima facie case of retaliation by demonstrating: (1) she engaged in a protected activity; (2) she suffered a materially adverse employment action taken by the employer; and (3) a causal link exists between these two events—the protected activity and adverse employment action. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002); *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (requiring "material

///

---

[3]In its reply, Defendant raises evidentiary objections to Plaintiff's Exhibits 21 and 22, which Plaintiff filed in support of her response (*see* ECF Nos. 84-21, 84-22). (ECF No. 88 at 3–4.) Defendant contends that these exhibits are unauthenticated and therefore cannot be considered on summary judgment under *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The exhibits are not relevant to the Court's ruling and thus the Court does not specifically address Defendant's evidentiary concerns.

5

adversity"). "Protected activity" may arise under either the opposition clause or the participation clause of Title VII. *See, e.g.*, *Crawford v. Metropolitan Gov't of Nashville*, 555 U.S. 271, 274, 276 (2009). An employee acts under the former when she opposes any unlawful employment practice as identified in the statute. *Id.*; 42 U.S.C. § 2000e-3(a). An employee acts under the latter where "[she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this subchapter.*" 42 U.S.C. § 2000e-3 (a) (emphasis added).

Only if a plaintiff establishes a prima facie case of unlawful retaliation does the burden shift to the defendant employer "to offer evidence that the challenged action was taken for legitimate, non-discriminatory reasons." *Dawson v. Entek*, 630 F.3d 928, 936 (9th Cir. 2011) (citation omitted). If the employer does so, "the plaintiff must show that the defendant's explanation is merely a pretext for impermissible discrimination." *Id.* (citation omitted).

Here, Plaintiff relies only on the opposition clause in the First Amended Complaint ("FAC"). (*E.g.*, ECF No. 33 at 9; *see also* ECF No. 84 at 25 (Plaintiff's arguments *directly addressing the first prong* arguing only "protected activity in opposition . . .").)[4] Plaintiff argues that she engaged in opposition activity and that the Ninth Circuit's decision which reversed this Court's previous finding at the Rule 12(b)(6) stage—that Plaintiff did not engage in protected activity (*see* ECF Nos. 45, 46, 52)—supports her position at this stage. (*E.g.*, ECF No. 84 at 2, 20–21, 25.) Defendant counters that the Ninth Circuit's reversal merely supports that Plaintiff's claim was sufficiently pleaded to survive dismissal
///

---

[4]At times in her response to the Motion, it nonetheless appears that Plaintiff attempts to bring the participation clause back into discussion. (*E.g.*, ECF No. 84 at 13, 22.) The Court is confined to Plaintiff's allegations in the FAC which alleges the opposition clause, as noted, and is assured by Plaintiff's limited argument focused on "opposition." Even if Plaintiff had also relied on the participation clause, the Ninth Circuit Court of Appeals has limited that clause to participation in an investigation before the Equal Employment Opportunity Commission. *See, e.g.*, *Vasconcelos v. Messe*, 907 F.2d 111, 113 (9th Cir. 1990) ("Accusations made in the context of charges before the Commission are protected by statute; charges made outside of that context are made at the accuser's peril."). It is undisputed that Plaintiff has only participated in an internal investigation. Thus, the participation clause is inapplicable.

on the pleadings and argues, *inter alia*, that Plaintiff's own statements to the relevant investigator undermine a finding that she engaged in opposition activity. (ECF No. 88 at 2–3, 10–11.) The Court agrees with Defendant.

To "oppose" ordinarily means "[t]o resist or antagonize . . .; to contend against; to confront; resist; withstand." *Crawford*, 555 U.S. at 276 (citations order). "[A]n ostensibly disapproving account of . . . sexually obnoxious behavior" may also constitute opposition activity. *Id.* And, there is no "reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion." *Id.* at 277. To be sure, the act that Plaintiff claims to oppose here is a single incident of purported sexual harassment—based on her claim that Lappin "grasped and fondled her hand." (*E.g.*, ECF No. 84 at 25; *see also* ECF No. 84-1 at 3; ECF No. 84-8 (photos).) Plaintiff's claim of protected activity is that she spoke with an investigator about the incident and characterized the incident as "odd" and "uncomfortable." (*E.g.*, ECF No. 84 at 25; *id.* at 26 (stating that "[Plaintiff] suffered serious adverse job actions after she spoke to the sexual harassment investigator").)

However, the evidence of Plaintiff's written statement to the investigator is the antithesis of opposition activity. Regarding the hand-grasping incident, Plaintiff stated:

> It is insane that somebody reported this event as somehow being inappropriate. If I felt it was inappropriate, I would have filed a written report. I understand the reporting process. I have no problem with my interactions with Mr. Lappin.
>
> I know how to report concerns at work. I felt absolutely nothing inappropriate had happened with Mr. Lappin. I was not concerned about my interactions with Mr. Lappin at all. I thought it was strange that he reached out for my hand and asked me about my ring. It was surprising but I certainly did not feel that it was inappropriate. Had I felt it was inappropriate, I would have gone to HR immediately or my superior. I understand the chain of command and how to report concerns. I am nothing if not open in my communications with respect to what is reportable and I have no concerns whatsoever regarding my interactions with Mr. Lappin.
>
> . . .
>
> I do not believe that I have been the victim of any sort of sexual harassment while working at CCA. Again, I understand the reporting process and would have reported any concern if I believe that I had experienced sexual harassment of any sort.

> . . .
>
> I am upset that anyone reported my interaction with Mr. Lappin as a concern or "inappropriate" because I have no concerns regarding that interaction at all.

(ECF No. 81-10.)

Plaintiff's words constitute a most unambiguous rebuke of any conclusion that she believed her interaction with Lappin was sexually harassing. Further, Plaintiff testified during her deposition that she prepared the statement herself. (*E.g.*, ECF No. 81-3 at 37.) She does not claim that anyone told her what to say or that she felt coerced to write the statement as is. Plaintiff's statement is unequivocal in establishing that she did not complain about Lappin's conduct and therefore did not engage in any opposition activity. To be clear, Plaintiff expressed "[i]t is insane that somebody reported this event." *Id.*

Considering Plaintiff's written statement, this Court cannot find that Plaintiff engaged in opposition activity when she gave her "account" of the relevant incident to the investigator. Nor is the Court's conclusion undermined my Plaintiff's claim in her supporting affidavit that she informed the investigator that she felt "uncomfortable" and that the incident was "odd" although admitting she did not report "'sexual harassment per se." (ECF No. 84-1 at 4; *see also id.* at 11 (stating she used the same words with Warden Collins).)[5] At most, Plaintiff's statement that the interaction was "uncomfortable" and/or "odd" amounts to tepid words not conveying the kind of "disapproving account," *Crawford*, 555 U.S. at 276, needed to support a finding of opposition. At worst for Plaintiff, these words are undermined by her own *subsequent* written statement to the investigator, which excluded the words and otherwise unequivocally denied that Plaintiff felt the incident was "inappropriate" (ECF No. 81-10). (*See* ECF No. 81-3 at 28, 37 (Plaintiff testifying that she

///

---

[5]Plaintiff cites to *Johnson v. Napolitano*, 686 F. Supp. 2d 32, 37 (D.D.C. 2010) as supporting the proposition that an employee need not "actually" engage in protected activity so long as the employer "perceived" the employee as having engaged in protected activity. (ECF No. 84 at 22.) The Court does not apply *Johnson* here because that decision is not binding on this Court and the Court sees no reason to apply it to the facts of this case.

wrote the statement after her in-person interview with the investigator).) Accordingly, even drawing material inferences in Plaintiff's favor, the Court concludes that the evidence does not support that Plaintiff engaged in protected opposition activity. For that reason alone, the Court grants Defendant's Motion.[6]

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendant's motion for summary judgment (ECF No. 81) is granted because Plaintiff fails to demonstrate that she engaged in protected activity, as required under Title VII.

The Clerk of the Court is directed to enter judgment accordingly and close this case.

DATED THIS 25th day of November 2019.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[6]The Court makes no finding as to whether Plaintiff in fact suffered retaliation in some form. The Court solely concludes that Plaintiff has not shown that she is entitled to Title VII's protection.