UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| LEANN ARCHULETA, | Case No. 2:15-cv-01608-MMD-VCF |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| CORRECTIONS CORPORATION OF AMERICA d\b\a NEVADA SOUTHERN DETENTION CENTER, | |
| Defendant. | |

## I.  SUMMARY

Plaintiff Leann Archuleta filed this employment discrimination case against her former employer, Defendant Corrections Corporation of America, now known as CoreCivic, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (ECF No. 33.) The sole issue before the Court is whether Defendant is entitled to summary judgment on Plaintiff's remaining retaliation claim. The Court previously found Defendant was so entitled—because Plaintiff had not established the protected activity element of her prima facie case (ECF No. 89 ("Prior Order"))—but the Ninth Circuit Court of Appeals reversed and remanded (ECF No. 96 ("Opinion")), finding that Plaintiff had established she engaged in protected activity when she responded to questions in an interview conducted as part of an investigation into whether she was sexually harassed by one of Defendant's executives, Harley Lappin (*id.* at 4). As further explained below, the Court now addresses the remaining arguments in Defendant's summary judgment motion (ECF No. 81 ("Motion")), and finds Defendant is not otherwise entitled to summary judgment.

///

///

## II. BACKGROUND

The Court incorporates by reference its recitation of the undisputed facts pertinent to the Motion from the Prior Order (ECF No. 89 at 2-4), along with the legal standard governing the Court's review of the Motion (*id.* at 4-5). The Prior Order granted summary judgment to Defendant on Plaintiff's retaliation claim, finding Plaintiff had not established the protected activity element of her prima facie case, and declined to address the two other arguments Defendant raised in its Motion. (*Id.* at 5-9.) Those two other arguments are: (1) that Plaintiff has not established the causation element of her prima facie case; and (2) even assuming that she has, Plaintiff has proffered insufficient evidence that Defendant's legitimate, proffered reason for her termination—putting subordinates at risk—was a pretext for terminating her for an unlawful reason. (ECF No. 81 at 15-16.)

At the conclusion of the Ninth Circuit's Opinion, the Ninth Circuit instructed the Court to address the other elements of Plaintiff's prima facie case in the first instance. (ECF No. 96 at 4.)

Following its order on the Ninth Circuit's mandate (ECF Nos. 97, 98), the Court vacated its Prior Order and corresponding judgment (ECF No. 99). The Court also ordered the parties to file a status report indicating whether the Court should consider the remaining arguments in Defendant's Motion. (*Id.*) Defendant responded affirmatively, requesting the Court address its other arguments, and Plaintiff acknowledged Defendant's request. (ECF No. 100 at 1-2.) The Court thus reviewed the Motion and associated briefing again.

The Court then issued a minute order giving Plaintiff the opportunity to address the evidentiary objection raised in Defendant's reply brief filed in support of the Motion for the first time. (ECF No. 101.) While previously immaterial to the Court's analysis of the Motion, as the Court stated in the Prior Order (ECF No. 89 at 5 n.3), Defendant's evidentiary objection bears on Defendant's remaining arguments in the Motion, so the Court will address it here. Finally, and in addition, both parties filed supplemental briefs in response to the Court's minute order. (ECF Nos. 102, 103.)

## III. DISCUSSION

The Court first addresses Defendant's evidentiary objection and the parties' supplemental briefs on it, and then addresses Defendant's arguments that Plaintiff fails to establish causation and pretext.

### A. EVIDENTIARY OBJECTION

Defendant argues that two exhibits submitted with Plaintiff's response to Defendant's Motion (ECF No. 84-21, 84-22) are unauthenticated, and thus the Court may not consider them in ruling on the Motion. (ECF No. 88 at 3-4.) One of the exhibits is purportedly an email from Lappin, forwarded by Scott Craddock to Robert Horton, in which Lappin discusses the incident between Lappin and Plaintiff central to Plaintiff's case. (ECF No. 84-21 (the "Email").) The other exhibit is a memo with "Charles Martin" written at the top, but the Court cannot say what the name at the top means. (ECF No. 84-22 (the "Memo").) Plaintiff argues in its supplemental brief that both exhibits may be authenticated, and the Court may therefore consider both, under Fed. R. Evid. 901(b)(4). (ECF No. 102 at 2.) Defendant of course disagrees. (ECF No. 103.) The Court agrees with Plaintiff that it may consider the Email, but not the Memo.[1]

Fed. R. Evid. 901(b)(4) offers an example of evidence sufficient to support a finding that an item is what its proponent claims it is. *See* Fed. R. Evid. 901(a)-(b). It specifically provides:

> **Distinctive Characteristics and the Like.** The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Fed. R. Evid. 901(b)(4). As noted, Plaintiff relies on this rule in arguing the Court should consider the Email and the Memo.

---

[1] Plaintiff also argues that Defendant has waived its objection to these exhibits. (ECF No. 102 at 7-8.) Plaintiff's argument is unpersuasive, primarily because Defendant did object to the Court's consideration of these exhibits at the earliest reasonable opportunity. (ECF No. 88 at 3-4.) Moreover, and as Defendant argues (ECF No. 103 at 8), "the burden is on the proponent to provide authentic evidence and not on the responding party to object to its admissibility." *Downs v. Grusman*, Case No. 2:07-CV-0116-JCM-LRL, 2011 WL 1155356, at *2 (D. Nev. Mar. 28, 2011).

3

1      The Email contains sufficiently distinctive characteristics for the Court to consider it
2 under Fed. R. Evid. 901(b)(4) in ruling on the Motion. First, Craddock is using an
3 "@cca.com" email address. (ECF No. 84-21 at 2.) *See also La Jolla Spa MD, Inc. v. Avidas*
4 *Pharm., LLC*, Case No. 317CV01124MMAWVG, 2019 WL 4934178, at *11 (S.D. Cal. Oct.
5 7, 2019) ("Rather than the e-mails having generic addresses from publicly available e-mail
6 providers, the addresses here appear to be issued from an employer and contain the
7 employee's name in the address.") (citation omitted). Second, there is no real dispute that
8 the names of the individuals on the email thread are those of Defendant's employees (and
9 outside counsel retained by Defendant) pertinent to Plaintiff's allegations in this case.
10 (ECF No. 81 at 4 (stating that Charlotte Collins was the warden of the prison where Plaintiff
11 worked, and Lappin was one of Defendant's executives), 5-6 (stating that Horton was
12 outside counsel hired by Defendant to investigate whether Lappin sexually harassed
13 Plaintiff).) Third, in the email, Lappin is discussing the incident that is also central to this
14 case—where Lappin touched Plaintiff's hands in a way that made her feel odd and
15 uncomfortable. (ECF No. 84-21 at 2.) *See also* Fed. R. Evid. 901(b)(4) (permitting the
16 Court to consider the Email's contents). Fourth, the email is dated August 22, 2013, which
17 is about a month after the tour when the incident occurred—a reasonable time for Lappin
18 to be discussing the incident and its aftermath. (ECF Nos. 81 at 4, 84-21 at 2.) In sum, the
19 Court is convinced the exhibit (ECF No. 84-21) contains an email from Harley Lappin
20 discussing Plaintiff's potential allegations against him, as Plaintiff argues it is. *See* Fed. R.
21 Evid. 901(b)(4).

22      While Defendant relies on *Randazza v. Cox*, Case No. 2:12-cv-2040-JAD-PAL,
23 2014 WL 1407378, at *3 (D. Nev. Apr. 10, 2014) to argue the email is not authenticated,
24 the Court finds the Email distinguishable from the email Judge Dorsey found inadmissible
25 in *Randazza.* (ECF No. 103 at 4-5.) Judge Dorsey specifically pointed out there was an
26 unexplained gap in the email thread she was examining in *Randazza* because it was
27 "unclear how the person in control of the email address matt.baer@dylanenergy.com
28 came to be in possession of an email originally addressed to dylanchpmc@verizon.net."

4

*Randazza*, 2014 WL 1407378, at *3. There is no such gap in the email at issue here: Collins appears to have sent an email to Lappin, which he sent to Craddock with more explanation, and Craddock forwarded that email to Horton. (ECF No. 84-21 at 2.) And the names, dates, and timestamps on each email suggest a coherent thread. (*Id.*) Moreover, while it appears that the picture Charlotte Collins sent to Harley Lappin was dropped from the Email (*see id.*), it is visible in the version of the email included with Plaintiff's supplemental brief (ECF No. 102-1 at 10-12), which sheds further light on the picture that Lappin explains Collins sent him (ECF No. 84-21 at 2).[2]

However, the Court agrees with Defendant—and to some extent Plaintiff (ECF No. 102 at 5 (conceding the authentication of the Memo is "murkier"))—that it may not consider the Memo in ruling on Defendant's Motion. (ECF No. 103 at 5-6.) Plaintiff again relies on Fed. R. Evid. 901(b)(4) to authenticate this Memo, but cannot even say what the Memo is, much less point to any distinctive characteristics that would allow the Court to conclude the Memo is what Plaintiff says it is (if Plaintiff could say what it was). (ECF No. 102 at 5-6.) Further, Plaintiff and Defendant agree the Memo is not signed, and the writer is never identified. (ECF Nos. 102 at 5, 103 at 5-6.) And while the content of the Memo appears somehow related to Plaintiff's allegations in this case, the Memo contains no other, distinguishing characteristics that would allow the Court to deem it authenticated under Fed. R. Evid. 901(b)(4).

In sum, the Court will consider the Email in the deciding Defendant's Motion, but not the Memo.

///

///

---

[2]The Court also rejects Defendant's argument that it may not consider the Email because it contains hearsay. (ECF No. 103 at 7.) Specifically, the Court finds the Email falls within the exception provided in Fed. R. Evid. 803(3). Lappin is discussing his state of mind at the time he sent the Email. (ECF No. 84-21 at 2.) He writes he has decided to leave the possibility that Plaintiff might come forward with a sexual harassment allegation against him alone for the time being, but that he might support taking a different approach if Plaintiff continues discussing the incident, and if Collins brings it back to his attention. (*Id.*) That reflects both his intent, and is a plan. *See* Fed. R. Evid. 803(3).

5

## B.     PRIMA FACIE CASE

To prevail on a retaliation claim under Title VII, a plaintiff must first establish a prima facie case of retaliation by demonstrating: (1) she engaged in a protected activity; (2) she suffered a materially adverse employment action taken by the employer; and (3) a causal link exists between these two events—the protected activity and the adverse employment action. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). As further explained below, the Court finds that Plaintiff has sufficiently established her prima facie case to survive summary judgment. The Court addresses each of the three elements, in turn, below.

The Ninth Circuit held in its Opinion that Plaintiff has established the first element—protected activity—of her prima facie case. (ECF No. 96 at 3-4.) The Ninth Circuit specifically found that Plaintiff's participation in questioning about the incident where Lappin held her hand from an outside attorney investigator, where she described Lappin's behavior as odd, and said it made her feel uncomfortable, was protected activity. (*Id.* at 3.) This interview happened on or around September 3, 2013. (ECF No. 84-1 at 3-4.)

Turning to the second element—a materially adverse employment action—Plaintiff argues that the written discipline she received for failure to properly report allegations of sexual misconduct between inmates ("PREA allegations") and her termination by Defendant constitute materially adverse employment actions. (ECF No. 84 at 25.) While Defendant argues that both actions were taken for reasons unrelated to any sexual harassment investigation, and justified, Defendant also argues that Plaintiff's written discipline for failure to report PREA allegations happened before Plaintiff engaged in protected activity, so logically cannot be considered an adverse employment action. (ECF No. 81 at 15.) The Court will briefly address this argument.

Drawing all inferences in Plaintiff's favor, as the Court must in further evaluating Defendant's Motion, *see Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) ("we must view the evidence and inferences therefrom in the light most favorable to the party opposing summary judgment.") (citation omitted), Defendant's

6

written discipline of Plaintiff for failure to appropriately report PREA allegations occurred after Plaintiff's protected activity, such that the Court will consider it an adverse employment action. While Defendant more specifically argues that the discipline 'occurred' on August 30, 2013—before Plaintiff engaged in protected activity on September 3—the exhibit Defendant relies on does not establish that the discipline occurred on August 30. (ECF No. 81 at 4-5 (citing ECF No. 81-19 in pertinent part), 15.) The "CCA Facility Employee Problem Solving Notice" states that the 'date of incident' was August 15, 2013, and Michael Dickens appears to have signed it on August 30, 2013. (ECF No. 81-19 at 2.) However, Collins appears to have signed it on September 9, 2013, and Plaintiff never signed it. (*Id.*) Collins signed the next page on June 4, 2014, apparently noting that Plaintiff was "not present to sign" that day. (*Id.* at 3.) Moreover, despite Defendant's representation to the contrary (ECF No. 81 at 4-5), Collins merely speculated that an 'outside auditor' discovered Plaintiff's PREA allegation reporting mistakes on August 15, 2013 at her deposition (ECF No. 81-5 at 7). She did not make a definitive statement. (*Id.*) Thus, Defendant has proffered inadequate evidence to establish that Plaintiff was disciplined on August 30, 2013. As it is at least equally likely that Plaintiff was disciplined on September 9, 2013, or some later date (ECF No. 81-19 at 2-3), the Court will consider Plaintiff's discipline for failure to properly report PREA allegations as one of the adverse employment actions she suffered.

Turning back to Plaintiff's termination, Defendant does not really dispute that termination is a material, adverse employment action, but instead makes the reasonable argument Plaintiff was terminated for a set of reasons entirely unrelated to the investigation into whether Lappin sexually harassed her. (ECF No. 81 at 15-16.) To be clear, the Court finds that Plaintiff's termination constitutes a material, adverse employment action for purposes of evaluating the Motion. The Court therefore considers both Plaintiff's written discipline for failure to report PREA allegations and her termination the adverse employment actions required to satisfy the second element of her prima facie retaliation claim.

That brings the Court to the third element—causation. *See Villiarimo*, 281 F.3d at 1064 (characterizing this as the third element). "Title VII retaliation claims must be proved according to traditional principles of but-for causation[.]" *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

Plaintiff proffers several pieces of evidence to show causation, which generally also support her theory that Defendant's decision to discipline for failing to properly report PREA allegations, and to terminate her for endangering her subordinates, were mere pretexts to conceal Defendant's true motivations. (ECF No. 84 at 26-27.) Plaintiff alleges she was actually subject to these adverse employment actions in retaliation for her opposition to Lappin's sexual harassment—ostensibly, Defendant wanted to get rid of Plaintiff to protect Lappin's reputation. (ECF No. 33 at 10-11.) Plaintiff more specifically points to the following: (1) the short period of time between her protected activity and when she received written discipline, along with the relatively short period of time between her protected activity and her termination; (2) Collins' change in attitude towards her following her protected activity; (3) the Email; and (4) the Memo. (ECF No. 84 at 26-27.)

Not all of this proffered evidence tends to show causation. First, as explained *supra*, the Court will not consider the Memo because it is unauthenticated. Second, Plaintiff's counsel's statement that Collins' attitude towards Plaintiff changed after she engaged in protected activity is not supported by any citations to evidence, and attorney argument is not evidence. (*Id.* at 26 (declining to cite any evidence).) *See also, e.g.*, *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) ("Attorney argument is not evidence.").

That leaves the proximity in time and the Email. The Court finds that, taken together, they create a material issue of fact on causation sufficient to withstand Defendant's Motion. Again, construing the exhibit documenting Plaintiff's written discipline in the light most favorable to Plaintiff, the written discipline occurred within a week of her

8

engaging in protected activity. (ECF Nos. 84-1 at 3-4 (stating she was interviewed on September 3), 81-19 at 2 (indicating Collins signed and dated the discipline on September 9).) And Plaintiff was terminated about nine months after she engaged in protected activity, which is sufficiently close in time to allow for an inference of causation under these circumstances. (ECF Nos. 84-1 at 3-4 (September 3, 2013), 81 at 3 (stating Plaintiff was terminated in June 2014).) *See also Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (stating that "three to eight months is easily within a time range that can support an inference of retaliation" and cautioning against applying a mechanical rule in terms of how long is too long); *Bell v. Clackamas Cty.*, 341 F.3d 858, 865 (9th Cir. 2003) ("Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases."). And while nine months is a bit long, proximity in time does not stand alone here.

The Email also tends to establish a causal link between Plaintiff's protected activity and her proffered adverse employment actions. As Plaintiff argues, and again drawing all reasonable inferences in her favor when evaluating the Email, Lappin arguably suggests that he and other powerful people at Defendant should fire Plaintiff when she makes an inevitable mistake to prevent her from sullying Lappin's reputation by continuing to discuss the sexual harassment investigation. (ECF No. 84-21 at 2.) In pertinent part, he writes:

> We decided it was best just to monitor the situation and decide whether or not we need to intervene. At this point I suggest we leave it alone and allow the warden to monitor and report back if she continues to discuss her allegation or shop inappropriate pictures of me or others. She claims she has a lot of information on CCA staff and at some point plans to write a book about CCA. I suspect that will never happen. More than likely she will eventually do something to get into trouble at which time she will try to redirect the attention to others through these stories. Just wanted you to be aware of the situation.

(*Id.*) Lappin arguably perceives Plaintiff as a professional threat, one he appears prepared to neutralize should she continue to discuss his conduct. (*See id.*) Such an interpretation is at least consistent with Plaintiff's theory of the case. Of course, it is difficult to say exactly what Lappin means in this email. But his intent behind the Email is ultimately for the jury to decide. "Although this is a close case, such uncertainty at the summary judgment stage

9

must be resolved in favor of the plaintiff." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093 (9th Cir. 2008) (citation, internal quotation marks, and punctuation omitted).

In sum, the combination of the Email and the proximity in time between Plaintiff's protected activity and the adverse employment actions Defendant took against her create enough of a material dispute of fact on causation for the Court to find that Plaintiff has established her prima facie retaliation case.

## C. PRETEXT

As the Court has found Plaintiff made out her prima facie retaliation case, *see supra*, and Plaintiff does not dispute Defendant has proffered legitimate, nondiscriminatory reasons for her written discipline and termination (ECF No. 84 at 27-29), Plaintiff "must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). She has done so. Plaintiff largely points to the same evidence to show pretext that she did to establish causation. (ECF No. 84 at 27-29.) However, Plaintiff also argues that she was allowed to continue to conduct PREA trainings, even though the remedy provided in her written discipline for allegedly not reporting PREA allegations was to receive PREA training herself, which she argues suggests that the written discipline was pretextual. (*Id.* at 27.) She similarly challenges whether she was terminated for legitimate reasons, arguing the proffered reasons for her termination were pretextual. (*Id.* at 28-29.)

For its part, Defendant first argues in its Motion that Plaintiff has no evidence that her discipline or termination were pretextual (ECF No. 81 at 16), and then highlights in its reply the legitimate reasons it had to discipline and terminate Plaintiff (ECF No. 88 at 14-15).

But because, as mentioned, Plaintiff does not dispute that Defendant has proffered legitimate reasons for her written discipline and termination (ECF No. 84 at 27-29), Defendant's arguments are unpersuasive—they do not really address Plaintiff's arguments. More specifically, Defendant's arguments do not grapple with the proximity in time between Plaintiff's protected activity and the adverse employment actions taken

against her, Plaintiff's arguments tending to cast doubt on whether Defendant's proffered reasons for her discipline and termination are genuine, or the Email. (*Id.*) This evidence all tends to show pretext. And drawing all reasonable inferences in Plaintiff's favor, a rational jury can infer that the Email constituted a directive to get rid of Plaintiff whenever she 'makes a mistake.' (ECF No. 84-21 at 2.) This, in turn, would allow a reasonable jury to draw the inference that Defendant's proffered reasons for disciplining and then terminating Plaintiff were pretextual. "A plaintiff alleging employment discrimination 'need produce very little evidence in order to overcome an employer's motion for summary judgment.'" *Davis*, 520 F.3d at 1089 (citation omitted). Plaintiff has produced enough evidence to survive summary judgment on Defendant's pretext argument. *See id.* at 1091-93 (reversing the district court's grant of summary judgment to employer on pretext prong, noting that close cases should proceed past summary judgment).

In sum, because the Court finds the two remaining arguments in Defendant's Motion unpersuasive, the Court will deny the Motion.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendant's motion for summary judgment (ECF No. 81) is denied.

DATED THIS 29th Day of January 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE